SO ORDERED.

SIGNED this 8th day of May, 2013.





Robert E. Nugent
United States Chief Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KIMBERLY DAWN BRATT, | ) | Case No. 10-12055 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| TODD DUGGINS and | ) | |
| WILLIAM F. CUMMINGS, Receiver for | ) | |
| Shanannigans, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Adversary No. 10-5243 |
| | ) | |
| KIMBERLY DAWN BRATT, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

The Receiver moves for an order amending the judgment in this case to find that Kim Bratt's

1

debt to the LLC should be excepted from discharge for embezzlement under § 523(a)(4).[1] The Receiver specifically takes issue with the finding that he failed to plead embezzlement as a separate claim for relief in the adversary proceeding. Indeed, he argues that the plaintiff's contentions in the complaint and pretrial order are replete with references to Ms. Bratt's *conversion* of company assets and that conversion is essentially equivalent to embezzlement. But the word "embezzlement" appears nowhere in either pleading and, as discussed below, conversion is not its functional or legal equal. Because embezzlement was neither pled nor tried, there is no reason to amend the judgment and the Receiver's motion should be denied.

Analysis

**Legal Standards Applicable to Motions to Alter or Amend**

Motions to alter or amend a judgment are brought under Fed. R. Civ. P. 59(e) which applies in adversary proceedings.[2] Rule 9023 of the Federal Rules of Bankruptcy Procedure incorporates Rule 59, which allows for alteration or amendment of judgments when the movant questions the correctness of the judgment.[3] As stated in *In re American Freight System, Inc.*, "[m]otions to alter or amend are intended to correct manifest errors of law or fact or to present newly discovered evidence under limited circumstances."[4] The Receiver's motion essentially argues that the Court erred when it refused to

---

[1] Adv. Dkt. 150. On March 29, 2013, the Court entered judgment on the Receiver's nondischargeability claims in favor of Kimberly Bratt following a two-day trial. Adv. Dkt. 143, 144.

[2] Fed. R. Bankr. P. 7052(b) and 9023. In bankruptcy, a Rule 59(e) motion must be brought 14 days after entry of judgment. Fed. R. Bankr. P. 9023. The Receiver's motion is timely filed and will in fact be treated as a motion to alter or amend under Rule 59(e), as opposed to a motion for relief under Fed. R. Civ. P. 60(b). *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991).

[3] *Phelps v. Hamilton,* 122 F.3d 1309, 1323 (10th Cir. 1997).

[4] 168 B.R. 245, 246 (D. Kan. 1994) (citations omitted). *See also Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) which describes the following grounds for relief under Rule 59(e): an intervening change in controlling law, new evidence previously unavailable, or to correct
2

address in its Opinion the possibility that Kim Bratt had committed nondischargeable embezzlement. The Court finds that the Receiver presents a proper ground for his motion and now addresses the merits of the motion.

### *Theories and Claims Pled and Tried by the Receiver*

In my March 29, 2013 Opinion, I concluded that Bratt had not committed fiduciary fraud or defalcation because the Receiver did not prove that her relationship to the LLC, by virtue of her being its Secretary, created the express or technical trust that Tenth Circuit authority requires to establish the requisite fiduciary capacity for the § 523(a)(4) exception to discharge.[5] Recognizing that § 523(a)(4) contains a discharge exception for three distinct offenses (defalcation, embezzlement, and larceny), I also considered whether the Receiver had pled either of the other two grounds in § 523(a)(4), and concluded that he had not. Nor were they mentioned in the pretrial order.[6] Nor could I concluded that either issued had been "tried by consent" because no evidence of embezzlement or larceny had been presented. Finally, I concluded that the evidence at trial did not prove "the elements of embezzlement and larceny, including Kim's intentional misconduct, in the record."[7]

To determine whether these negative findings amount to correctable error under Rule 59, I first refer to the Receiver's amended complaint. A look at the amended complaint reveals that in its preamble, the Receiver sought relief "pursuant [to] . . . " § 523(a)(4) for *fraud committed in a fiduciary*

---

clear error or prevent manifest injustice.

[5] Dkt. 145, Opinion at pp. 15-19; *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367 (10th Cir. 1996).

[6] *See In re Deerman,* 482 B.R. 344, 373 (Bankr. D. N.M. 2012) (Embezzlement and larceny are separate grounds for nondischargeability for which no fiduciary capacity is required.); *In re Lynch,* 315 B.R. 173, 175 (Bankr. D. Colo 2004) (Section 523(a)(4) states three separate grounds for nondischargeability).

[7] Dkt. 145, Opinion at pp. 23-24.

3

*capacity*."[8] He alleged that Ms. Bratt "owed fiduciary duties to the company."[9] Count I was titled "Claim for Theft" and asserted that Kimberly Bratt "diverted" LLC funds for her benefit or that of others.[10] Count III was titled "Claim for Conversion" and alleges that Ms. Bratt removed personal property belonging to the LLC from the Shannanigans Bar; within that count, the Receiver alleged that the action is brought under "§ 523(a)(2), (a)(4) for a determination excepting plaintiffs' debts from discharge."[11] In his prayer for relief, the Receiver sought a judgment for "all monies converted" from the LLC, a determination of non-dischargeability under § 523(a)(2), (4) [sic], and "for conversion in an amount exceeding $10,000 . . . ."[12]

The agreed final pretrial order was entered on October 16, 2012, three months after Dean Bratt's chapter 7 case was dismissed. He was accordingly dismissed as a defendant from the adversary proceeding, too.[13] In the "Nature of Case" section of the order, the plaintiffs identify three claims against Kimberly Bratt: "two *by the Receiver* for monies converted from Shanannigans and for conversion of personal property of Shanannigans . . ., and *by Duggins* . . . due to defendant's fraudulent inducement."[14] The § 523(a)(2) reference only pertains to Duggins' fraud claim, leaving the Receiver's conversion claims under § 523(a)(4). In the "Plaintiff's Theories of Recovery" section, the Receiver

---

[8] Dkt. 8, opening paragraph (Emphasis added.).

[9] Dkt. 8, ¶ 4.

[10] Dkt. 8, ¶ 8.

[11] Dkt. 8, ¶s 20-21. Count III was added by the amended complaint.

[12] Dkt. 8, p. 6.

[13] Dkt. 105.

[14] Dkt. 105, p. 3. As Mr. Bratt was no longer in bankruptcy, he was not in line to receive a discharge and the Receiver's nondischargeability claims against him in the adversary proceeding were moot.

4

asserted that Bratt converted Shanannigans money and personal property for her personal use and for her other businesses. The plaintiffs added as a separate theory their claim that Bratt's fraudulent, malicious, and intentional conduct entitled them to recover punitive damages.[15] The "Issues of Fact" section contains a series of questions concerning whether Ms. Bratt made unauthorized withdrawals, diverted payments, or removed personal property from the bar. In the "Issues of Law" section, the Receiver posed as an issue whether the defendant converted Shanannigans' money and removed and concealed Shanannigans' personal property. In the "Mixed Issues" section, the Receiver poses as issues whether the defendant was liable for her husband's wrongdoing, and whether "plaintiffs' claims against defendant [are] non-dischargeable pursuant to 11 U.S.C. 523(a)(2), (4) [sic]." He also asks whether "defendant had a fiduciary duty to *Plaintiff Duggins* [sic] and did she commit fiduciary fraud or defalcation in that capacity?"

The only whiff of embezzlement emanates from Mixed Issue 4 in which the Receiver asks whether the Plaintiff can show "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud?" and cites to my order in *Cousatte v. Lucas*.[16] In *Lucas*, the plaintiff sought to except a state court judgment entered against the debtor for undue influence in procuring a will and trust favorable to the debtor from debtor's discharge under § 523(a)(4) and (a)(6) and relied

---

[15] Dkt. 105, p. 9, ¶ 7.1(d). Plaintiffs belatedly sought in the pretrial order to amend their pleadings to add a claim for punitive damages on the intentional conversion and fraudulent inducement claims. Dkt. 105, p. 3. The Court denied that request. Dkt. 125. Thus, the reference to fraudulent, malicious, and intentional conduct to support an award of punitive damages was not an issue at trial. In any event, the Court questions whether "punitive damages" constitutes a separate cause of action; it is more accurately in the nature of additional relief sought under the fraud and conversion causes of action.

[16] 2002 WL 32667610 (Bankr. D. Kan. Dec. 5, 2002), *aff'd in part and remanded in part* 300 B.R. 526 (10th Cir. BAP 2003). The issue as stated is a partial quote of the law on embezzlement. 300 B.R. at 531. The omitted part of the quoted is that embezzlement requires a "fraudulent appropriation of property . . [that] has been entrusted, or into whose hands it has lawfully come . . ." *Id.*

5

primarily upon the collateral estoppel effect of the state court judgment. The plaintiff there asserted fiduciary fraud or defalcation, embezzlement and larceny claims under § 523(a)(4) based upon the debtor's eventual liquidation of the trust assets. This court rejected the plaintiff's claims and the Bankruptcy Appellate Panel affirmed.[17] The Receiver's citation to *Lucas* in the pretrial order is the only reference to embezzlement in all the pleadings, but it is an indirect one at best. Nowhere in the final pretrial order do the words "embezzlement" or "larceny" appear.

The Receiver's pre- and post-trial briefing also make no mention of embezzlement.[18] Rather, they make it clear that the Receiver was proceeding solely under fiduciary defalcation under § 523(a)(4), noting that it is the one theory that did not require proof of a certain mental state or intent. He stated:

> Recovery under 11 U.S.C. § 523(a)(4).
> To except from discharge a debt for defalcation, plaintiffs must prove (1) the existence of a fiduciary relationship between defendant and plaintiffs, and (2) a defalcation committed by defendant in the course of that fiduciary relationship. Antlers Roof-Truss & Building Supply v. Storie (In re Storie), 216 B.R. 283, 286 (10th Cir. BAP 1997). Defalcation under § 523(a)(4) is a fiduciary's (defendant's) failure to account for funds, whether intentional, willful, reckless, or negligent. *No mental state is required.* Id. at 288-89.[19]

The Receiver's post-trial brief reaffirms his intention to proceed on fiduciary defalcation only.[20] He opens by stating that he "seeks a non-dischargeable judgment . . . for conversion and breach of fiduciary duty under 11 U.S.C. § 523(a)(4)." He emphasized that Bratt's "knowledge or mental state is neither at issue nor a defense" and that she "can not escape the fact that she breached her fiduciary duty to

---

[17] 300 B.R. at 528.

[18] Dkt. 124 and 140.

[19] Dkt. 124, p. 1. (emphasis added).

[20] Dkt. 140, p. 6 (repeating the above-quoted language from the first trial brief).

6

Shanannigans by converting monies . . . ."[21] In short, while the Receiver made numerous references to "conversion," and fiduciary defalcation, he never alluded to embezzlement (other than by his oblique citation of the *Cousatte* case). Only now, having failed to prevail on the merits of the claim he pled, briefed and tried, does the Receiver introduce embezzlement as a theory in the case.

### *Conversion is not an Exception to Discharge under § 523(a)(4)*

Having failed to plead embezzlement in this case overtly, the Receiver now asks me to conclude that he pled it by repeatedly referring to the tort of conversion, arguing that § 523(a)(4) encompasses conversion because it involves the same misconduct as embezzlement. Congress did not expressly state that conversion is a ground for nondischargeability under § 523(a)(4) and discharge exceptions are to be narrowly construed in favor of the debtor.[22] Conversion may in some circumstances support a discharge exception. But that typically fits, if at all, under § 523(a)(6) – the "willful and malicious injury" exception – and requires a showing of malice.[23] Conversion claims will support exceptions to discharge under § 523(a)(6) only where the claimant can show that the debtor not only willfully converted the

---

[21] *Id.* at p. 7.

[22] *Grogan v. Garner,* 498 U.S. 279, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991); *Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir. 1986),*abrogated on other grounds by Grogan,* 498 U.S. at 286 (the proper burden of proof). The rules of statutory interpretation provide that exceptions to discharge that are not expressly included in the statutory provision are excluded. *In re Cairone,* 12 B.R. 60, (Bankr. D. R.I. 1981); *Gleason v. Thaw,* 236 U.S. 558, 561-62, 35 S. Ct. 287, 59 L.Ed. 717 (1915) (Exceptions to discharge are confined to those plainly expressed; professional services are not "property" within the meaning of former fraud discharge exception under Bankruptcy Act.).

[23] In these instances, the debtor must have committed conversion with the requisite wrongful intent. *See e.g. Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 331-32, 55 S. Ct. 151, 79 L.Ed. 393 (1934) (decided under former Bankruptcy Act of 1898); *In re Thiara,* 285 B.R. 420 (9th Cir. BAP 2002) (conversion of crop loss insurance check in which creditor claimed an interest); *In re Wooten,* 423 B.R. 108 (Bankr. E.D. Va. 2010 (not every conversion is a willful and malicious injury; conversion of creditor's collateral by selling equipment and failing to pay over proceeds was willful and malicious). But here the Receiver did not plead a claim under § 523(a)(6). *See also* 4 COLLIER ON BANKRUPTCY ¶ 523.12 and [1] (16th ed. 2009).

7

creditor's property, but also intended the resulting harm.[24] Had Congress intended to include conversion among the discharge exceptions it could have so provided. It did not, and debts incurred through technical or innocent conversions without bad intent are therefore dischargeable.[25] The Receiver cites no authority holding that a debt for conversion is excepted from discharge under § 523(a)(4) and I find none.[26]

Conversion is not equivalent to embezzlement. Kansas case law defines conversion as the unauthorized assumption and exercise of the right of ownership over personalty belonging to another to the exclusion of the other's rights.[27] The plaintiff must have a general property right in the converted property and the right to immediate possession of it. No fraudulent intent on the part of the converter

---

[24] *Kawaauhau v. Geiger,* 523 U.S. 57, 61-62, 118 S.Ct. 974, 140 L.Ed. 2d 90 (1998) (Section 523(a)(6) encompasses acts done with the actual intent to cause injury and not merely intentional acts that "happen" to cause injury); *In re Longley,* 235 B.R. 651 (10th Cir. BAP 1999) (Debtor who at gunpoint relinquished his secured car did not intend to harm the creditor and therefore the conversion was not a willful and malicious injury and was dischargeable.).

[25] *Davis,* 293 U.S. at 331-32. *See In re Guy,* 101 B.R. 961(Bankr. N.D. Ind. 1988) (while debtor may be liable in damages for mere technical conversion in state court, technical conversion is dischargeable in bankruptcy); *In re Stelluti,* 167 B.R. 29 (Bankr. S.D. N.YL. 1994) (where technical conversion is not malicious, debt arising therefrom does not fall with exception to discharge, § 523(a)(6)). *See also,* 4 COLLIER ON BANKRUPTCY ¶ 523.12[3], [4] (16th ed. 2009).

[26] Before 1978, willful and malicious *conversion* of the property of another was an exception to discharge under § 17a(2) of the Bankruptcy Act of 1898, as amended by Pub. L. 467 (1970). That provision was repealed when the Bankruptcy Reform Act of 1978 was enacted and conversion was not retained among the exceptions to discharge listed in § 523 of the Code. The willful and malicious injury exception, however, was contained in both the Bankruptcy Act and the Bankruptcy Reform Act of 1978. Pub. L. 95-598, 92 Stat. 2549 (Nov. 6, 1978). *See Matter of DeVier,* 57 B.R. 602, 603-04 (Bankr. E.D. Mich. 1986) (discussing the legislative history of § 523(a)(6) and the willful and malicious injury exception).

[27] *Temmen v. Kent-Brown Chev. Co.,* 227 Kan. 45, 50, 605 P.2d 95 (1980); *Snider v. MidFirst Bank,* 42 Kan. App. 2d 265, 270, 211 P.3d 179 (2009); *Bomhoff v. Nelnet Loan Services, Inc.,* 279 Kan. 415, 109 P.3d 1241 (2005); *Moore v. State Bank of Burden,* 240 Kan. 382, 729 P.2d 1205 (1986).

8

is required; the intent required is simply to use or dispose of the property.[28] By contrast, embezzlement as it is used in § 523(a)(4) is defined by federal law and requires a showing that the debtor *fraudulently appropriated* money or property with which the debtor was entrusted or that lawfully found its way into the debtor's hands.[29] The Tenth Circuit has stated that embezzlement requires fraud in fact or moral turpitude and intentional wrong.[30]

Thus, embezzlement shares with conversion the element of appropriating or exerting dominion over the property of another, but it is not embezzlement's equivalent, at least in bankruptcy law. One can be a convertor without having had property entrusted to her and without appropriating that property with fraudulent intent, in other words, without being an embezzler. And without a showing that a convertor has acted with fraudulent or malicious intentions, a debt incurred by conversion is dischargeable.[31] The Receiver did not plead that Bratt maliciously converted Shanannigans property or converted it with fraudulent intent. Had Congress intended to sanction fraudulent conversion in § 523(a)(4) as it did in the 1898 Bankruptcy Act, it would have used that word rather than, or in addition

---

[28] *Millennium Financial Services, L.L.C. v. Thole,* 31 Kan. App. 2d 798, 808, 74 P.3d 57 (2003) (defendant's state of mind is irrelevant to the issue of conversion); *Snider, supra* (Conversion is a strict liability tort.); *Speer v. City of Dodge City,* 6 Kan. App. 2d 798, 636 P. 2d 178 (1981) (Defendant's knowledge of the converted property's ownership is not an element of conversion and therefore a defendant's lack of knowledge of the plaintiff's ownership is no defense to conversion); *Nelson v. Hy-Grade Const. & Materials, Inc.,* 215 Kan. 631, 634, 527 P.2d 1059 (1974).

[29] *In re Wallace,* 840 F.2d 762, 765 (10th Cir. 1988). *See also Bryant v. Tilley (In re Tilley),* 286 B.R. 782, 789 (Bankr. D. Colo. 2002) (identifying 5 elements for embezzlement: 1. entrustment (property lawfully obtained originally); 2. of property; 3. of another; 4. that is misappropriated (used or consumed for a purpose other than that for which it was entrusted); 5. with fraudulent intent.).

[30] *In re Black*, 787 F.2d 503, 507 (10th Cir. 1986).

[31] *See* fn. 23, 24 and 25, *supra; Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 331-32 (an act of conversion, if willful and malicious, is an injury to property within the scope of the "willful and malicious" discharge exception, but not every act of conversion is willful and malicious; there must be some "aggravated features" associated with the conversion).

9

to, embezzlement.

A case that illustrates the flaw in the Receiver's position is *In re Parker*.[32] In that case, the trustees of union employee benefit plans brought nondischargeability claims against the debtor, the employer's president, treasurer and majority shareholder for failing to make contributions and remit union dues to the benefit plans as required by the collective bargaining agreement. The trustees initially brought their claims under § 523(a)(4) and (a)(6), but withdrew their (a)(6) claim at the close of the evidence. The trustees asserted that the debtor committed "embezzlement, conversion, and/or larceny" under § 523(a)(4) by not remitting the union dues deducted from the employees' pay to them.[33] The bankruptcy court analyzed each of the theories under § 523(a)(4).

> Debts resulting from the fraudulent appropriation of another's property are excepted from discharge under § 523(a)(4), whether the appropriation was unlawful at the outset, and therefore a larceny, or whether there was an unlawful appropriation after the property was entrusted to the debtor's care, and therefore an embezzlement.[34]

\* \* \*

**(3) Conversion**

Plaintiff cites no authority for its proposition that a debt resulting from a debtor's conversion of property is nondischargeable under the exception to discharge contained within § 523(a)(4). A debt arising from an unlawful conversion of property of another is not specified as nondischargeable in § 523(a) because typically a "willful and malicious injury" under § 523(a)(6) would cover a "willful and malicious conversion." 4 L. King, Collier on Bankruptcy ¶ 523.12 [2], at 523–92.2 (15th ed. rev.1998). Under New York law, an action for conversion of money will lie where there is an obligation to return or otherwise treat in a particular manner the specific money

---

[32] 388 B.R. 11 (Bankr. N.D. N.Y. 2008). Although New York law applied, the law of conversion is the same as Kansas law.

[33] *Id.* at 21.

[34] *Id.* Because the debtor, as employer, lawfully took possession of the employees' wage withholdings, he did not commit larceny. As for embezzlement, the bankruptcy court found that the evidentiary record "was nonexistent" to show the debtor appropriated the property with fraudulent intent. An appropriation of funds without an intent to defraud, did not rise to the level of embezzlement.

10

in question. *LoPresti v. Terwilliger,* 126 F.3d at 41 (citation omitted). " 'The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another.' " *Id.* at 42 (quoting *Fashions Outlet of America, Inc. v. Maharaj,* 88 Civ. 7231, 1991 WL 143421, at *2 (S.D.N.Y. July 22, 1991)). Thus, in some instances, but not all, conversion may constitute a willful and malicious injury. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). As Plaintiff withdrew its § 523(a)(6) causes of action at the conclusion of trial based upon the evidence before the court, there is no exception to discharge based upon conversion under § 523(a)(6) before it.[35]

Conversion is not equivalent to embezzlement and § 523(a)(4) does not except debts for conversion from discharge in the absence of fraudulent conduct. In short, the Receiver's "conversion" claims were insufficient to plead or assert a claim for embezzlement under § 523(a)(4).

Section 523(a)(4) embezzlement was never pleaded or preserved as an issue. And, as noted in the original judgment, the Receiver simply didn't show that Kimberly Bratt acted with the requisite fraudulent intent to support such a claim. Without that showing, there is simply no basis upon which this court could modify the judgment to conclude that Kimberly Bratt owes a debt that must be excepted from her discharge for embezzlement under § 523(a)(4). The Receiver's motion is therefore DENIED.

# # #

---

[35] *Id.* at 21-22.